***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. An employer-employee relationship as defined by N.C. Gen. Stat. §97-2(2) existed between James C. Thomas (deceased) and defendant-employer on March 13, 2002.
4. The said defendant-employer Northwood Company, Inc./Thomas Bilt was insured by Builders Mutual Insurance Co. on March 13, 2002.
5. James C. Thomas was killed on March 13, 2002, by Scott Hudgins Spencer.
6. At the time James C. Thomas was so assailed he was acting in the course and scope of his employment.
7. James C. Thomas' average weekly wage as of March 13, 2002 was $567.29.
8. On March 13, 2002, Scott Hudgins Spencer took a 2001 Chevrolet truck, N.C. License No. NWB1925, Vehicle I.D. No. 2GCEC19T111204263, and a cell phone no. (252) 671-7933, away from a house under construction at 120 Willis Road, Bayboro, North Carolina.
9. Lola M. Thomas and Dennis V. Thomas were the mother and father of the deceased and are his sole next of kin under N.C. Gen. Stat. §§ 97-38 97-40.
10. The cost of transporting the body of James Christopher Thomas to Craven Regional Medical Center was $301.00, and said cost was a reasonable and necessary expense incurred as a proximate result of the injury sustained by James Christopher Thomas on March 13, 2002.
11. The cost of burial for James Christopher Thomas incurred by Lola Thomas was $2,313.83.
12. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1 — Cell phone bill for Thomas Bilt Homes Inc. for March 2002
b. Stipulated Exhibit #2 — Vehicle registration for 2001 Chevrolet truck owned by Thomas Bilt
c. Stipulated Exhibit #3 — Death Certificate for deceased employee
d. Stipulated Exhibit #4 — Aerial photo where the injury occurred
e. Stipulated Exhibit #5 — House plans for the premises where the injury occurred
f. Stipulated Exhibit #6 — videotape of scene where injury occurred
g. Stipulated Exhibit #7 — photocopies of crime scene photographs taken by law enforcement officials
h. Stipulated Exhibit #8 — medical records of the deceased employee
i. Stipulated Exhibit #9 — deceased employees birth certificate
j. Stipulated Exhibit #10 — two-page private investigative report — admitted with plaintiff's standing objection to term "random act" being mentioned in the report
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The defendant-employer contracted to construct a home at 120 Willis Road with Mr. Frank Willis, who was having the home built for his daughter, Gina Willis. Willis Road extends perpendicular into Highway 55, which runs east to the Town of Bayboro, and west to the Town of Alliance.
2. Dennis Thomas was the president of the defendant-employer, Northwood Company, Inc./Thomas Bilt, and he is the father of the deceased employee. On March 13, 2002, Dennis Thomas assigned James C. Thomas, the decedent, to do interior trim work at the house under construction on Willis Road. Only one other house was located on Willis Road, the residence of Franklin T. Willis, Jr., who was away from his home and at work on March 13, 2002, until some time between the evening hours of 5:30 and 6:00.
3. A 2001 Chevrolet truck, N.C. License No. NWB1925, Vehicle I.D. No. 2GCEC19T111204263, registered in the name of Thomas Bilt Homes, Inc., was supplied to decedent by the defendant-employer for use in his employment. A cell phone was also supplied to decedent by the defendant-employer for use in his employment that had a phone number of (252) 671-7933, registered in the name of Northwood Company.
4. To the rear and to the east of the house under construction on Willis Road where the deceased employee was working was a pine plantation, where a timber company was growing trees for commercial use. No less than 75 yards to the west of the house was the eastern edge of a development of approximately twenty homes around a street called Forest Circle in Alliance, North Carolina. Forest Circle is also separated by a drainage ditch and a row of trees from the tract of land where Willis Road is located.
5. On March 13, 2002 in the late afternoon/early evening, Scott Hudgins Spencer walked up to the gate of the yard and home of Ms. Mary Ann Harrison, who lived in Forest Circle. Ms. Harrison knew Mr. Spencer, as he had attended school with her children. Mr. Spencer had a weapon that he propped up against a tree before approaching Ms. Harrison's grandson, requesting a drink of water. Mr. Spencer visibly had ammunition strapped across his chest and shoulder.
6. Ms. Harrison came out to greet Mr. Spencer, and they exchanged niceties. Mr. Spencer indicated that he was tired, that he had been hunting, and that he had planned to continue with his hunting activities. Mr. Spencer appeared pleasant. After their brief discussion, Mr. Spencer entered the woods near Ms. Harrison's home. Ms. Harrison's grandson noted that it was not hunting season.
7. Unbeknownst to Ms. Harrison, Mr. Spencer was on the run from the authorities who were seeking to arrest Mr. Spencer on a common law robbery charge. Mr. Spencer had also recently been charged with kidnapping. Earlier in the afternoon before going to Ms. Harrison's home, Mr. Spencer had gone to his parents' home, and they insisted that he turn himself in. Mr. Spencer decided against this advice and instead, around 3:15 pm, left his parents' home and went to the home of Mr. Johnny Rice. Mr. Spencer broke into Mr. Rice's house and stole a .22 rifle and about 500 rounds of ammunition, together with a .12 gauge double barrel shotgun and a box of shells. Mr. Spencer claims that at the time, he was under the influence of 80 milligrams of Oxycontin, and that he had also used cocaine.
8. Meanwhile, decedent was performing his trim work duties at the house under construction at 120 Willis Road. At 5:05 p.m., decedent spoke by telephone with his fiancée, Susan Sensenig, and told her that he was working and wanted to finish his work before he came home. Decedent was working alone.
9. After leaving Ms. Harrison's home, Mr. Spencer walked to the house under construction at 120 Willis Road where decedent was working. Mr. Spencer was under the impression that the carpenter working there was the boyfriend of Gina Willis and that the individual was from a wealthy family. By the time Mr. Spencer reached 120 Willis Road, it had begun to rain. Mr. Spencer entered the home where decedent was working, presumably to get out of the rain. Mr. Spencer engaged in small talk with decedent.
10. At some point during his visit at 120 Willis Road, Mr. Spencer shot and killed James C. Thomas with a shotgun blast to the head. When decedent's body was discovered by law enforcement officers, a coping saw lay on the floor just a few inches from his outstretched hand. Decedent's tool belt also lay by his side. Mr. Spencer claimed the shooting was accidental.
11. Mr. Spencer escaped from the scene by stealing the defendant-employer's 2001 Chevrolet truck that was parked at 120 Willis Road, that decedent was using for his employment. While driving away, he used the cell phone belonging to defendant-employer, to make a call to his ex-girlfriend. Later that night, Mr. Spencer murdered another individual, Lance Corporal David Marvin Barnett of Havelock. Mr. Spencer then drove back to Pamlico County where he was eventually apprehended. Mr. Spencer pled guilty to the first degree murders of James C. Thomas and the second victim.
12. At the time he was shot, decedent was doing work at the direction and for the benefit of the defendant-employer during the hours of his employment and at the location the defendant-employer had directed him to go. Decedent and Scott Hudgins Spencer were totally unacquainted up to and including the time of the fatal shooting.
13. The body of decedent was discovered by Franklin T. Willis, Jr. when he returned to Willis Road after work some time between 5:30 and 6:00 p.m.
14. The shooting incident which led to the death of James C. Thomas arose out of his employment with the defendant-employer, as Spencer specifically went to the house in search of the carpenter, whom he believed to be rich. Since decedent was doing carpentry work at the home, Spencer targeted decedent, looking for money. The evidence shows that decedent was searched for money, and his company-owned truck and cell phone were stolen. As Spencer was drawn to decedent particularly because he was doing carpentry work, the murder was related to his employment and was not a random act of violence.
15. At the time of his death, there were no other persons wholly or partially dependent upon the deceased employee for support. Decedent was not married at the time of his death, nor did he have any children.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Decedent sustained an injury by accident on March 13, 2002, arising out of and in the course of his employment with the defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Lola M. Thomas and Dennis V. Thomas are the deceased employee's sole next of kin and are entitled to the benefits afforded by N.C. Gen. Stat. §§ 97-38 97-40.
3. The cost of transporting the body of decedent to Craven Regional Medical Center in the amount of $301.00 was a reasonable and necessary expense incurred as a result of the injury by accident on March 13, 2002.
4. The burial expense in the amount of $2,313.83, which was paid by plaintiff Lola Thomas is a cost recoverable under N.C. Gen. Stat. § 97-38.
5. As his sole next of kin, Lola M. Thomas and Dennis V. Thomas are entitled, share and share alike, to 400 weeks of workers' compensation death benefits, payable by the defendants, at the compensation rate of $378.21 per week, commuted to present value and paid in one lump sum.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall pay to Lola M. Thomas and Dennis V. Thomas, share and share alike, 400 weeks of workers' compensation death benefits at the compensation rate of $378.21 per week, commuted to present value and paid in one lump sum in the amount of $133,163.85.
2. As reimbursement for burial expenses, defendants shall pay to Lola M. Thomas the burial expenses incurred in the sum of $2,313.83.
3. The defendants shall pay or reimburse plaintiffs for the cost of transporting the deceased employee's body to Craven Regional Medical Center in the amount of $301.00.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Lola M. Thomas and Dennis V. Thomas under Paragraph 1 of this AWARD is hereby approved and shall be paid as follows: twenty-five percent (25%) of the sums due Lola M. Thomas and Dennis V. Thomas shall be deducted from said sum and paid to plaintiff's counsel in one lump sum.
5. Defendants shall pay all costs.
This the ___ day of March, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER